153 N.J. Super. 355 (1977)
379 A.2d 862
CIALI CACIOPPO AND ROSALIA CACIOPPO, PLAINTIFFS,
v.
THE BOEING COMPANY ET AL., DEFENDANTS, AND THE BOEING COMPANY AND SUMMIT APARTMENTS, INC., DEFENDANTS AND THIRD PARTY PLAINTIFFS,
v.
A KERZNER, INC., THIRD-PARTY DEFENDANT AND FOURTH PARTY PLAINTIFF,
v.
LASKER-GOLDMAN CORP. ET AL., FOURTH-PARTY DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided May 3, 1977.
*356 Mr. Jerome L. Yesko, attorney for plaintiffs (Mr. Richard W. Englebart, of counsel).
Messrs. McDermott & McGee, attorneys for defendant Bayonne Block Co. (Mr. Kenneth J. Fost, of counsel).
Messrs. DeYoe, Guiney & Raziano, attorneys for fourth-party defendant David A. Crane & Associates (Mr. Frederick C. Heissenbuttel, of counsel).
Messrs. Morrison & Griggs, attorneys for fourth-party defendant David Volkert & Associates (Mr. Norman S. Costanza, of counsel).
Messrs. Markey, Witham & Amabile, attorneys for defendants and third party plaintiffs, The Boeing Company & Summit Apartments, Inc. (Mr. John P. Markey, of counsel).
Messrs. Morgan, Melhuish, Monaghan, McCoid & Spielvogel, attorneys for third party defendant and fourth party plaintiff A. Kerzner, Inc. (Mr. Martin B. Wallerstein, of counsel).
*357 Messrs. Cole & Cole, attorneys for fourth-party defendant Lasker-Goldman Corp. (Mr. John J. Lynch, of counsel).
MORRISON, J.C.C., Temporarily Assigned.
This is a motion for summary judgment brought by a fourth-party defendant Lasker-Goldman in this very complex litigation. By way of general background, the main action has been initiated via the complaint of one Giali Cacioppo. Cacioppo appears to have been injured by a cinderblock which struck him on the head while he was engaged in his employment on a construction site.
Lasker-Goldman, is a defendant[1] solely on the basis of the fourth-party complaint of A. Kerzner & Sons, Cacioppo's employer. Lasker-Goldman was the "construction manager" for this project; Kerzner was doing structural work thereon. Both these parties appear to be contractors engaged by the direct defendants, Summit, Inc. and The Boeing Co.
We note that the complexity of this situation is in no way ameliorated by Kerzner's trifurcated status. Kerzner is:
1. The employer of the injured plaintiff Cacioppo, it has paid worker's compensation and by virtue of N.J.S.A. 34: 15-8 cannot be, nor has it been named as, a direct defendant;
2. The named third-party defendant by virtue of an alleged written indemnification agreement with two of the defendants, Summit, Inc. and The Boeing Co.,[2] in the main action, and
3. Fourth-party plaintiff on its claim for common-law indemnification against a number of fourth-party defendants whom it has named.
*358 At the outset it must be stated that there is no express contract for indemnification between movant Lasker-Goldman and Kerzner. Kerzner's claim for indemnification is based on the common-law doctrine of implied indemnification.
Movant Lasker-Goldman asks the court to dismiss Kerzner's fourth-party complaint against it on the basis that Kerzner is precluded, as a matter of law, from asserting the common-law doctrine of implied indemnification. Lasker-Goldman arrives at this conclusion by "extending" the holding of Mayer v. Fairlawn Jewish Center,[3] 38 N.J. 549 (1962).
The court has carefully reread Mayer and cannot adopt counsel's reading. While Mayer is instructive, in that it interpolated the major premise behind implied indemnification into its holding, that case is not controlling since it dealt with indemnification under a written contract. "We are not dealing here with a claim of express or implied indemnity or restitution." Mayer at 561. Therefore, the court must resolve this problem under those cases which expressly address themselves to implied indemnification.
We begin our discussion by acknowledging the well-settled principle in New Jersey that on a challenge to the sufficiency of a complaint "the plaintiff is entitled to a liberal interpretation of its contents and to the benefits of all its allegations and the most favorable inferences which may reasonably be drawn from them." Rappaport v. Nichols, 31 N.J. 188, 193 (1959). Given these guidelines, it becomes our task to carefully examine Kerzner's status in the light of the doctrine of implied indemnification and determine if there is any possibility that Kerzner can sustain this cause of action against Lasker-Goldman.
As has previously been touched upon, Kerzner's liability if any, results solely from its being a contractual indemnitor; no joint tortfeasor action is sustainable against it *359 as a result of its having paid worker's compensation benefits. See Ruvolo v. United States Steel, 133 N.J. Super. 362, 366 (Law Div. 1975). Its potential liability is triggered by Kerzner's alleged agreement to indemnify defendants Summit, Inc. and The Boeing Co.[4] With this understanding, we now confront the issue raised by this application: Can a party who is not himself a tortfeasor, but solely a contractual indemnitor, assert a claim for implied indemnification against a fourth-party who, it alleges, was negligent?
The implied indemnification doctrine has evolved through our case law to the point that fact patterns must be separated into two distinct categories:
(1) Where the negligence of the purported indemnitee is "principal" or "primary" and (2) where the indemnitee's negligence is merely "constructive" or "vicarious." Hut v. Antonio, 95 N.J. Super. 62, 69 (1967)]
In those cases in which the negligence of the party seeking indemnification is "principal" or "primary," there can be no recovery. Conversely, "the right to indemnity is granted only to those whose liability is secondary and not primary, i.e., whose negligence is not morally culpable but is merely constructive, technical, imputed or vicarious." Public Service Elec. & Gas Co. v. Waldroup, 38 N.J. Super. 419, 432 (App. Div. 1955).
Furthermore, the common-law doctrine of implied indemnification requires the indemnitee to be without fault. As succinctly stated in the Restatement Restitution, § 96 (1937):
A person who, without personal fault, has become subject to tort liability for the unauthorized and wrongful conduct of another, is *360 entitled to indemnity from the other for expenditures properly made in the discharge of such liability.
We note that this section has been cited with approval by our Supreme Court in Adler's Quality Bakery, Inc. v. Gaseteria, Inc., 32 N.J. 55, 80 (1960).
We recognize, as did the Court in Doloughty v. Blanchard Const. Co., 139 N.J. Super. 110, 121 (Law Div. 1976), that the concepts of "active" as opposed to "passive" negligence, and "primary" as opposed to "secondary" negligence, are legal fictions. However, we are firmly convinced that these concepts are rooted and grounded in the sound equitable principle that a constructive "wrongdoer" should not be required to bear the ultimate liability for the conduct of the actual tortfeasor. For this reason the court will adhere to these distinctions, notwithstanding the criticisms thereof contained in Doloughty, supra at 122.
In the present case Kerzner stands as a contractual indemnitor who, in turn, seeks indemnity under common law. Its liability springs from a contractual obligation. Since "constructive, technical, imputed or vicarious liability are the only types of liability within the purview of the theory of implied indemnification, we fail to see how a contractual indemnitor such as Kerzner can assert this doctrine against a fourth party. Kerzner has assumed Summit, Inc. and The Boeing Co.'s liability as a part of the consideration underlying its construction contract. This assumption of liability did not arise by imposition of law, i.e., as a result of a determination that Kerzner's conduct was "primary" as opposed to "secondary," or "active" as opposed to "passive" negligence.
Kerzner, therefore, cannot assert that it is in the position of one "who is compelled to pay for another's wrong." See Taft v. Shaffer Trucking, Inc., 52 A.D.2d 255, 383 N.Y.S.2d 744 (App. Div. 1976). On the contrary, Kerzner's liability is self-imposed by virtue of its contract which discarded the "shield" it had against liability under worker's compensation.
*361 Assume, arguendo, that Kerzner could stand in the best possible position vis-a-vis its contractual liability, i.e., if it were forced to pay under the indemnity agreement, it would be subrogated to all rights of its indemnitee. In this posture Kerzner would "stand in the shoes" of Summit, Inc. and The Boeing Co. and could possibly assert a claim for implied indemnification arising out of the purported breach of duty by Lasker-Goldman under its contract with Summit, Inc. and The Boeing Co.
At first blush Kerzner would appear to be in the proper station for a claim of implied indemnification. However, since the rights of the subrogee "arise no higher than those of the subrogor," Kerzner would also accede to the jury's determination in the main case that Summit, Inc. and The Boeing Co. were negligent and their negligence proximately caused Cacioppo's injury (this determination is, of course, the condition precedent to any liability on the part of Kerzner under its contract). See Mayfair Fabrics v. Henley, 101 N.J. Super. 363, 368 (Law Div. 1968). With this stigma, i.e., active negligence, attached to it, Kerzner would be precluded from asserting implied indemnification.
Given the posture of Kerzner as one who has assumed the "primary" liability of named defendants, we hold that it cannot assert a cause of action under implied indemnification. A contrary holding would fly in the face of this equitable doctrine which looks to protect "one whose liability is merely constructive."
Wherefore, the motion of Lasker-Goldman is hereby granted.
NOTES
[1] As a result of a previous adjudication by this court, Lasker-Goldman is no longer a direct defendant in this action.
[2] It remains a matter for proof as to whom of these two interrelated companies the express contractual provisions for indemnification run. Solely for the purposes of this application, we will assume that the provisions run to both.
[3] A case with which this court is very familiar.
[4] Kerzner's liability is contingent upon: (1) a jury holding Summit and Boeing liable in the main case, and (2) the court finding that Kerzner indemnified Summit and Boeing for their losses arising out of this incident. The court will avoid future categorization of Kerzner's liability as "potential" in order to avoid being cumbersome.